COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


ANTONIO LEE WINSTON

OPINION BY

v.      Record No. 2286-06-2                      JUDGE ROBERT P. FRANK
                                                   DECEMBER 27, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

Christopher L. Anderson (Christopher L. Anderson, P.C., on brief),
for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Antonio Lee Winston, appellant, was convicted on his conditional guilty plea of

possession of cocaine with the intent to distribute, and possession of heroin with the intent to

distribute, both in violation of Code § 18.2-248. On appeal, he contends the trial court erred

when it denied his motion to suppress evidence discovered during a warrantless strip and body

cavity search following his arrest. Finding no error, we affirm the judgment of the trial court.

BACKGROUND

Detective Anthony Coates arrested appellant for robbery. Coates transported appellant to

the jail, whereupon a robbery warrant was issued. Appellant was not given a bond, and was

processed for detention into the jail facility.

Detective Coates remained with appellant as appellant was searched by jail personnel.

Subsequently, the deputy and Coates escorted appellant into a private room where he was

instructed to remove his clothing. The deputy then directed appellant to squat down and pull

apart his buttock cheeks.  Appellant complied, and Coates heard the deputy ask appellant to "pull out what he had in his rear."  Appellant did so, and Coates took possession of the baggie, which contained cocaine.

At the suppression hearing Sergeant William Bart of the Sheriff's Office testified that he works at the "Jail Annex," which is where individuals who enter the jail are searched immediately after having been arrested.  While he was not the person who performed the search of appellant, Sergeant Bart indicated that at the time of this search it was the jail's policy to refrain from conducting "medical" body cavity searches.[1]  However, the purpose of performing strip searches is "to prevent contraband from coming into the jail."

Appellant challenged the constitutionally of the search during a motion to suppress.  The court overruled the motion, and appellant entered conditional guilty pleas to his charges.  This appeal follows.

ANALYSIS

"On appeal from a denial of a suppression motion, we must review the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

> An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal.  In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (alteration in original) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).

---

[1] The record does not define "medical" body cavity search.

Appellant argues the trial court erred when it concluded that the warrantless body cavity search of appellant was reasonable under the Fourth Amendment. He contends that no exigent circumstances existed for such a search, and the officers lacked any articulable suspicion that appellant was in possession of contraband. The Commonwealth responds that appellant was subjected only to a visual body cavity search and that in light of the fact that appellant was a pretrial detainee, the search of appellant was reasonable. We agree with the Commonwealth.

We begin our analysis with a determination of the type of search performed on appellant.

> Previously, we have defined a "strip search" as "an inspection of a naked individual, without any scrutiny of his body cavities." Kidd v. Commonwealth, 38 Va. App. 433, 446, 565 S.E.2d 337, 343 (2002). A "visual body cavity search" is more intrusive and "extends to a visual inspection of the anal and genital areas." Id. (citation omitted). Finally, a "manual body cavity search" involves "some degree of touching or probing of body cavities" and is the most intrusive type of body search. Id. (citation omitted).

King v. Commonwealth, 49 Va. App. 717, 724, 644 S.E.2d 391, 394 (2007).

Turning to the facts of this case, we find that the evidence established a visual body cavity search. Appellant was told to disrobe, squat, and pull apart his buttocks cheeks. After observing something between appellant's buttocks cheeks, a deputy sheriff told appellant to remove the item. Appellant himself removed the baggie; the deputy never touched appellant. Thus, we find that appellant was subjected to a visual body cavity search.[2]

We next address whether this visual body cavity search violated appellant's Fourth Amendment rights. We find it did not.

---

[2] Appellant testified that the deputy retrieved the baggie. However, the trial court was not obligated to accept appellant's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

"The Fourth Amendment prohibits only 'unreasonable searches and seizures,' not reasonable ones." King, 49 Va. App. at 723, 644 S.E.2d at 394 (quoting Anderson v. Commonwealth, 20 Va. App. 361, 363, 457 S.E.2d 396, 397 (1995)). The authority of the police under the Fourth Amendment to conduct a "full search" of an arrestee's person without a warrant is only skin deep. Commonwealth v. Gilmore, 27 Va. App. 320, 328, 498 S.E.2d 464, 468 (1998). We have previously held that a "warrantless search involving a bodily intrusion, even though conducted incident to a lawful arrest, violates the Fourth Amendment unless (1) the police have a 'clear indication' that evidence is located within a suspect's body and (2) the police face exigent circumstances." Id. at 330, 498 S.E.2d at 469.

However, a different set of principles governs institutional searches of pretrial detainees being processed for admission into the general population of a penal facility. Craddock v. Commonwealth, 40 Va. App. 539, 549, 580 S.E.2d 454, 459 (2003). See also King, 49 Va. App at 727, 644 S.E.2d at 396 (finding a manual body cavity search unreasonable absent any evidence that appellant was a pretrial detainee or prisoner). Citing Bell v. Wolfish, 441 U.S. 520, 559 (1979), this Court has determined that, in the context of detainee strip searches, the rule of reason enforced by the Fourth Amendment cannot be simplified into an analytical tool of "mechanical application." Craddock, 40 Va. App. at 550, 580 S.E.2d at 460. According to Bell, the ultimate Fourth Amendment question is whether a prison search policy is "reasonable" under the circumstances. This reasonableness test requires a balancing of individual and institutional interests:

> In each case it requires a balancing of the need for the particular
> search against the invasion of personal rights that the search
> entails. Courts must consider the scope of the particular intrusion,

> the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. (citing Bell, 441 U.S. at 559).[3]

In Bell, the United States Supreme Court held that the Fourth Amendment was not violated when a correctional institution required visual body cavity searches of pretrial detainees after every contact visit with visitors from outside the institution. Bell, 441 U.S. at 558-60. The Court reasoned, "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." Id. at 560. The Court upheld the use of both strip searches and visual body cavity searches, holding that "significant and legitimate security interests of the institution" warranted the intrusive search. Id.

We note that several federal Courts of Appeals have applied the Bell analysis and upheld the constitutionality of policies that required a visual body cavity search or strip search after certain activities irrespective of whether the prison officials entertained a reasonable suspicion the prisoners had concealed contraband on their persons. Given the legitimate need to prevent drugs and weapons from being introduced into or transported throughout a prison, and the relative lack of intrusiveness involved in the search, the policies met the constitutional requirement of reasonableness even without any specific evidence linking a prisoner to possession of contraband. See Goff v. Nix, 803 F.2d 358, 368-71 (8th Cir. 1986) (upholding policy to conduct visual body cavity search of inmates after returning from visits or exercise to

---

[3] We note that although Craddock, 40 Va. App. 539, 580 S.E.2d 454, adopts the Bell, 441 U.S. 520, balancing test rejecting the need for an individualized suspicion, Craddock nevertheless considers that the detainee in that case was known for concealing contraband. As the Commonwealth here suggests, we find that the added fact of an individualized suspicion contributed nothing to Craddock's balancing test involving justification and personal invasion. In that regard, we do not consider any facts specific to appellant (other than his status as a pretrial detainee) in determining whether the visual body cavity search was reasonable.

prevent introduction of contraband or weapon); <u>Campbell v. Miller</u>, 787 F.2d 217, 228 (7th Cir. 1986) (upholding policy to conduct visual body cavity search before and after visit to prison library); <u>Arruda v. Fair</u>, 710 F.2d 886, 886-88 (1st Cir. 1983) (upholding policy to strip search all inmates in special maximum security unit who go to prison law library, infirmary, or receive visitors).

The Supreme Court's opinion in <u>Bell</u> governs our approach to this appeal. We conclude that the government has a compelling interest in maintaining order in a jail and in preventing the introduction of contraband into the facility. A prisoner or pretrial detainee has a limited reasonable expectation of privacy in regard to a search of his person. There is no requirement that a search be supported by either probable cause or reasonable suspicion. Instead, the relevant inquiry is whether under all of the circumstances the search was reasonable, which in turn depends on consideration of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Bell</u>, 441 U.S. at 559.

As set forth above, case law makes clear a prison search is not subject to a litmus test of probable cause or reasonable suspicion. Applying these principles to this case, we conclude the visual body cavity search of appellant was reasonable and therefore constitutional. Appellant, being held without bond, was entering the inmate population at a detention facility. Given the jail's responsibility to find and destroy drugs, as well as its obligation to avoid potentially volatile situations, the deputy sheriff was justified in conducting the visual body cavity search. Furthermore, the search was carried out in a reasonable manner that protected appellant's sense of personal dignity. He was escorted to a private area in which he was asked to disrobe. Two

male officers observed him and limited the search to a visual inspection. Neither officer attempted to touch appellant.[4]

Viewed in the light most favorable to the Commonwealth, the evidence concerning the scope, manner, justification, and place of appellant's visual body cavity search conforms to the standard of reasonableness required by the Fourth Amendment. The trial court, therefore, did not err in denying appellant's motion to suppress the drugs discovered during this search.

### Statutory Violation

Appellant asserts his body cavity search violated Code § 19.2-59.1, which provides in relevant part:

> A. No person in custodial arrest for a traffic infraction, Class 3 or Class 4 misdemeanor, or a violation of a city, county, or town ordinance, which is punishable by no more than thirty days in jail shall be strip searched unless there is reasonable cause to believe on the part of a law-enforcement officer authorizing the search that the individual is concealing a weapon. All strip searches conducted under this section shall be performed by persons of the same sex as the person arrested and on premises where the search cannot be observed by persons not physically conducting the search.

> \* \* \* \* \* \* \*

> C. A search of any body cavity must be performed under sanitary conditions and a search of any body cavity, other than the mouth, shall be conducted either by or under the supervision of medically trained personnel.

Appellant contends that Code 19.2-59.1(C) was violated because no medically trained personnel were present at the time of the search. This contention is without merit. According to

---

[4] Appellant argued for the first time at oral argument that because a deputy sheriff threatened him with pepper spray, he was coerced into removing the item himself. Essentially, he claimed this was the functional equivalent of the deputy conducting a manual body cavity search. As appellant did not include this argument in his questions presented, we will not address it on appeal. Rule 5A:20; Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (finding that "an issue [was] not expressly stated among the 'questions presented,' . . . we, therefore, decline to consider [it] on appeal").

subsection (A), this statute applies only to a traffic infraction or a Class 3 or Class 4 misdemeanor or a violation of a city, county, or town ordinance, which is punishable by no more than thirty days. Appellant, having been charged with a felony, was not subject to the provisions of Code § 19.2-59.1. See Craddock, 40 Va. App. at 552 n.2, 580 S.E.2d at 461 n.2 ("Code § 19.2-59.1 does not apply to felony detainees, and, in any event, does not provide a statutory suppression remedy for alleged violations." (citations omitted)).

## CONCLUSION

For the foregoing reasons, we find the trial court did not err in refusing to suppress evidence recovered from the visual body cavity search of appellant.

Affirmed.